United States District Court
Southern District of Texas
**ENTERED**
October 20, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEDORA CHETLIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-1986 |
| | § | |
| EXXON MOBIL OIL CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending in this case that has been referred to the undersigned Magistrate Judge for all further pretrial proceedings is Defendant Exxon Mobil Oil Corporation's Motion for Summary Judgment (Document No. 10). Having considered that motion, the response, the additional briefing, the claims and allegations in this case, and the underlying benefits determination and record, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 10) be GRANTED and that Plaintiff's claims be DISMISSED WITH PREJUDICE.

## I. Background

This is an ERISA denial of benefits claim. Plaintiff Medora Chetlin ("Chetlin"), the former spouse of Nathan Broussard, maintains that she is due his retirement benefits from Defendant Exxon Mobil Oil Corporation ("Exxon"). Exxon, in response, argues that Broussard was not entitled to a retirement annuity until January 1, 2008, and his preceding death, in February 2007, coupled with Chetlin and Broussard's divorce in 1974, render Chetlin's claim to ERISA benefits unsupportable under the terms of the Plan.

Exxon has filed a Motion for Summary Judgment, arguing that it is entitled to summary judgment on Chetlin's ERISA benefits claims on three bases: (1) it is not the proper Defendant; (2) Chetlin did not exhaust her administrative remedies; and (3) the benefits determination is correct and in accord with the terms of the Plan. In response to those arguments, Chetlin maintains that the benefits decision was based on the wrong version of the retirement plan, and that the "administrative record is incomplete and likely inaccurate."

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). This summary judgment standard applies in ERISA cases such as this, *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014), *but see Koch v. Metropolitan Life Ins. Co.*, Civil Action No. 7:18-cv-00154-O, 2019 WL 6329383 *4 (N.D. Tex. Nov. 26, 2019) (finding that *a de novo* review of the record should not be made in the context a motion for summary judgment where there are underlying disputed issues of fact), even though it is for the Court to determine, in an appeal-like review, whether benefits were properly denied. That appeal-like review is conducted *de novo* unless the ERISA plan gives valid and lawful discretionary authority to the plan administrator to decide claims, in which case the review is for abuse of discretion. *Ariana M v. Humana Health Plan of Texas, Inc.,* 884 F.3d 246 (5th Cir. 2018)

When the review is *de novo*, the court must "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing" an entitlement to benefits. *Pike v. Hartford Life & Accident Ins. Co.*, 368 F.Supp.3d 1018, 1030 (E.D.

Tex. 2019). When the review is for abuse of discretion, the court must determine whether there is substantial evidence to support the decision and whether the decision is arbitrary and capricious. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) ("A plan administrator abuses its discretion where the decision is not 'based on evidence, even if disputable, that clearly supports the basis for its denial.'").

Here, for the reasons that follow, whether the benefits determination is reviewed de novo or for an abuse of discretion, Chetlin is not entitled to any benefits under the terms of the Plan

## III. Discussion

It is undisputed that Nathan Broussard was employed by Exxon from 1968 to March 1982; that Chetlin and Broussard divorced on April 4, 1974 (sealed Document No. 9 at 495-499); and that Broussard died in February 2007. It is also undisputed, and the record reflects, that Broussard paid a total of $280.68 in retirement contributions during his employment with Exxon (sealed Document No. 9 at 474-75), and that a letter was sent to him, dated September 8, 1982, which that advised him that his retirement date was January 1, 2008, that the "aggregate amount" of the contributions he had made to the plan was $280.68, and that:

> [i]n the event of your death prior to your retirement date, your designated beneficiary Medora C. Broussard will receive your contributions (set forth above) and interest, computed to your date of death.

(Sealed Document No. 9 at 483-84). The record also shows that Chetlin made no formal claim for benefits from Exxon and/or the Plan until this suit was filed. In that regard, in particular, the record shows that the ExxonMobil Benefits Service Center sent Chetlin a letter dated November 30, 2012, informing her that she was entitled to a refund of the retirement contributions Broussard had made

(sealed Document No. 9 at 500-504). Chetlin, seemingly in response to that letter, requested, through an attorney, information from Exxon in December 2012 about Broussard's contributions and his employment at Exxon (sealed Document No. 9 at 593).[1] Through another attorney, Chetlin requested the same type of information on June 21, 2013 (sealed Document No. 9 at 591). Nothing in the record shows that any documents or information were provided to Chetlin in response to her two written requests. Instead, in correspondence dated August 22, 2013, the Benefits Service Center asked Chetlin for a copy of Broussard's death certificate, and asked that she complete the form that would enable her to receive a refund of Broussard's retirement contributions (sealed Document No. 9 at 505). In two follow-up letters, dated September 25, 2013, and October 28, 2013, the Benefits Service Center again asked Chetlin to complete the Contribution Form (Sealed Document No. 9 at 506, 507). The administrative record contains no further inquiries on Chetlin's part.

---

[1] The entirety of the December 17, 2012, letter, is as follows:

> Please be advised that I have been retained to represent Medora Chetlin regarding the benefits of the late Nathan P. Broussard. In a letter from ExxonMobil Benefits Service Center, dated November 30, 2012, Ms. Chetlin was informed that Mr. Broussard, who had been an employee of ExxonMobil for 30 years, had contributed only $2,588.11 during his tenure with the company. Ms. Chetlin, fearing a mistake, has repeatedly attempted to contact ExxonMobil in order to receive clarification about Mr. Broussard's contributions. She has been less than satisfied with the feedback she has been receiving.
>
> As Mr. Broussard's beneficiary, Ms. Chetlin is entitled to these documents as well and any and all funds that Mr. Broussard has in his retirement accounts. As Mr. Broussard was employed with ExxonMobil for 30 years and never made any withdrawals from his retirement accounts, Ms. Chetlin's concern regarding the amount that has been reported to her by your representatives is well founded.
>
> On behalf of Ms. Chetlin, I am requested access to all of Mr. Broussard's retirement contributions during his tenure at ExxonMobil as well as any statements and reports related to his retirement funds. We appreciate your assistance in this matter. Please feel free to contact me with any questions or concerns that may arise in this matter.

(Sealed Document No. 9 at 593).

On May 1, 2019, Chetlin filed suit against ExxonMobil in state court for breach of contract. In the state court petition she filed, Chetlin asserted that she was entitled to Broussard's pension benefits as his designated beneficiary, and that ExxonMobil was denying her those benefits. Exxon removed the case based on ERISA preemption, which Chetlin did not oppose. Then, following that removal, the ExxonMobil Benefits Service Center sent Chetlin a letter dated July 23, 2019, denying her request for any benefits that exceeded those set forth in the November 30, 2012, letter. In the July 23, 2019 Benefit Determination Letter (sealed Document No. 9 at 594-596), the benefits available to Chetlin as Broussard's designated beneficiary were explained as follows, in relevant part:

> The ExxonMobil Benefits Service Center received your request to provide the details of your pension benefit payable as the beneficiary of Nathan Broussard under the Mobil Oil Retirement Plan (MORP) due to his death on February 26, 2007. As beneficiary, you are entitled to receive the Refund of Mr. Broussard's Employee Contributions Plus Interest. Below are details of that calculation. You have also claimed you are entitled to additional death benefits under MORP.
>
> Your claim has been reviewed and after careful evaluation of the plan provisions, your request cannot be granted.
>
> * * *
>
> Mr. Broussard was hired on May 15, 1968 and terminated employment from MORP on March 1, 1982 and had a vested age 65 benefit of $241.46 per payable [sic] at age 65 (January 1, 2008) as a Straight Life Annuity. Mr. Broussard died on February 26, 2007 prior to receipt of his pension benefit. Since he was divorced at his date of death and there was no Qualified Domestic Relations Order (QDRO) in place to provide a spouse's benefit, the only death benefit payable to his beneficiary was the Refund of his Contributions Plus Interest.
>
> As of Mr. Broussard's Date of Termination on March 1, 1982, he had employee contributions without interest total[ing] $280.68. Interest on employee contributions is computed annually. As of December 31, 1997, the total of his employee contributions plus interest was $1,457.62, therefore the total interest as of December 31, 1997 was $1,176.94. ($1,457.62 - 280.68).

* * *

> You were entitled to receive a Refund of Contributions Plus Interest made by Nathan P. Broussard from MORP as of December 1, 2012. This refund was payable in the form of a Single Lump Sum payment.
>
> The portion of the distribution attributable to employee contribution is not taxable, but the accumulated interest on these contributions is taxable. Therefore, the breakdown of your benefit is as follows:
>
> Taxable amount: $2,588.11
> Non-taxable amount: $280.86
> Total Refund: $2,868.79
>
> You will be entitled to additional interest payable upon your Actual Payment Date (APD). For example, as of August 1, 2019, your Total Refund would be $3,311,96 (Taxable amount: $3,031.28; Non-taxable amount: $280.68). Note that this is just an example and your final interest calculation will depend upon your Actual Payment Date (APD).
>
> Again, since Mr. Broussard was divorced at his date of death and there was no Qualified Domestic Relations Order (QDRO) in place to provide a spouse's benefit, the only death benefit payable to his beneficiary was the Refund of his Employee Contribution Plus Interest. Per the Heritage Mobil PSA Addendum 1a, Refund of Employee Contributions section, p. 19; "In the event of death of a participant prior to his Annuity Starting Date, if there is no Pre-Retirement Spouse's Allowance in effect at the time of death, and there is no spouse eligible to receive a Retirement Benefit under the plan, then the total amount of the participant's Employee Contributions with Interest shall be paid to the Designated Beneficiary.'
>
> Therefore, your claim to receive additional death benefits is denied.

(sealed Document No. 9 at 594-595). Chetlin was also advised in the July 23, 2019 Benefit Determination Letter that she had 60 days to appeal the benefits determination. Chetlin did not pursue an administrative appeal and has, instead, continued to pursue additional benefits in this lawsuit.

In its Motion for Summary Judgment, Exxon maintains, in addition to arguing that Chetlin named the wrong defendant and failed to exhaust her administrative remedies, that the benefits

decision is factually and legally supported by the following terms of the Plan:

> In the event of death of a participant prior to his Annuity Starting Date, if there is no Pre-Retirement Spouse's Allowance in effect at the time of death, and there is no spouse eligible to receive a Retirement Benefit under the plan, then the total amount of the participant's Employee Contributions with Interest shall be paid to the Designated Beneficiary.

(Sealed Document No. 9 at 437). In response to the Motion for Summary Judgment, Chetlin argues very generally that those terms were not the terms in effect at and during the time Broussard was employed by Exxon, and that the administrative record is "likely" incomplete. Chetlin, however, has offered absolutely no evidence to support either argument. In addition, Chetlin has not identified any term of the Plan that would entitle her to more than the contributions Broussard made plus interest on those contributions, which is what she has been offered.

Initially, because there is no evidence in the record that the administrative record is not accurate and complete, that administrative record (sealed Document No. 9) can and must be the basis upon which to consider Chetlin's benefits claim, and the denial of that claim.

**A. Proper Defendant**

Exxon first argues that it is not the proper defendant to a denial of benefits case such as this, and that "Administrator-Benefits," an entity separate from Exxon, is the claims administrator of the Plan at issue, which should have been named as the defendant in this case. Chetlin does not generally dispute this proposition, but argues that Exxon should be considered the plan administrator because nothing in the Plan itself, or any documents received by Chetlin reflect anything to the contrary.

In a case seeking ERISA benefits, the proper Defendant is the administrator of the ERISA Plan. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013)

("'[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan'" and that '[i]f an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits'"); *Mid-Town Surgical Ctr., L.L.P. v. Humana Health Plan of Texas, Inc.*, 16 F. Supp. 3d 767, 778 (S.D. Tex. 2014) (an entity that "does not control administration of a plan at issue in this case and thus did not 'exercise [ ] actual control over the denial,' it is not a proper defendant"). Here, that means that Exxon, even though it was Broussard's employer, is not the proper defendant if it did not, and does not, administer and/or manage the ERISA plan at issue.

Because the record shows that"Administrator-Benefits" is the claims administrator for the Plan at issue in this case (sealed Document No. 9 at 594-596), and because Exxon has represented that "Administrator-Benefits" is a "separate entity from Exxon Mobil Corporation," Reply (Document No. 17) at 1, n. 1, Exxon is not the proper Defendant and the claims against it can be dismissed on that basis.

**B. Exhaustion of Administrative Remedies**

Exxon next argues that Chetlin did not exhaust her administrative remedies by filing an internal, administrative appeal of the benefits decision dated May 23, 2019. Again, Chetlin does not generally dispute this proposition, but instead argues that Exxon should be estopped from asserting a failure to exhaust defense based on its own failure to provide Chetlin with the information she requested in 2012-2013, as well as its own failure, seven years later, to timely adjudicate her claim.

In this Circuit, beneficiaries of an ERISA plan are generally required to exhaust the administrative remedies available under the Plan prior to bringing a claim for benefits. *Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000). The

exhaustion requirement is not, however, jurisdictional, and is, instead, an affirmative defense, *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 303 (S.D. Tex. 2011), *aff'd sub nom. N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015), upon which the Defendant bears the burden of proof. In addition, "a plaintiff's failure to exhaust available administrative remedies maybe excused on equitable grounds." *Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 740 (W.D. Tex. 2015).

Here, in support of the exhaustion defense, Exxon points to Chetlin's failure to make a formal claim for benefits, as well as her failure to appeal the July 23, 2019 benefits determination. Chetlin, in response, argues that any failure to exhaust her administrative remedies should not be held against her because Exxon failed to follow its own administrative review process and decided the benefits claim in July 2019, seven years after she first asked for information about the available benefit and Broussard's employment with Exxon.

The record shows that Chetlin did not make a formal claim for benefits from the Plan, but she did make two written requests for information in 2012-2013. Thereafter, there is nothing in the record until May 23, 2019 – after Chetlin filed suit – to show that she was provided with the documents and information she sought. *See* Letter from ExxonMobil QDRO Administration, dated May 23, 2019, and attachments (sealed Document No. 9 at 458-507). Because the record shows that it took seven years, until May 23, 2019, for the Plan to provide Chetlin with the information and documents she sought from the Plan in 2012 and 2013, and because Chetlin, as a designated beneficiary, had no other way to obtain plan and employment records and documents so that she could make a formal claim for benefits, the equities weigh in favor of excusing Chetlin's failure to exhaust her administrative remedies. *See e.g. Bourgeois,* 215 F.3d at 481-82 (applying an estoppel

theory to excuse a plaintiff's failure to exhaust his administrative remedies).

**C. The Benefits Determination**

Exxon ultimately argues that the denial of benefits to Chetlin, and the reimbursement of Broussard's contributions ($280.68) plus interest, is all that Chetlin was entitled to under the terms of the Plan. Chetlin responds, without any evidence, that the version of the Plan submitted by Exxon, which had an effective date of July 1982, may not have contained the same terms as the plan that was in effect at the time Broussard was employed, between 1968 and March 1982.

The Plan at issue, as reflected in documents that comprise the administrative record, sets forth the benefit(s) due for a participant who dies prior to their "annuity starting date." The Plan provides, in numerous provisions and an addendum, as follows:

> In the event of the death of such former participating employee, the designated beneficiary will receive any excess of the participating employee's contributions with interest computed to the earlier of the participant employee's normal retirement date or date of death over any retirement annuity payments which the participating employee may have received.
>
> * * *
>
> In the event of death of such former participating employee, the designated beneficiary will receive any excess of the participating employee's voluntary and required contributions with interest computed to the earlier of the participant's Normal Retirement Date, or the date of his or her death, over any annuity payments which the participating employee may have received.
>
> * * *
>
> If a participating employee dies before actual retirement without the election to provide and annuity to a contingent annuitant specified in Article VII, Section 2(b) having become effective and unless the Spouse's Protection Option is in effect, his or her voluntary and/or required contributions plus interest computed to the date of death shall be paid to the designated beneficiary but no other benefit shall be payable under this Plan on account of the death of the participating employee.

* * *

> In the event of death of a participant prior to his Annuity Starting Date, if there is no Pre-Retirement Spouse's Allowance in effect at the time of death, and there is no spouse eligible to receive a Retirement Benefit under the plan, then the total amount of the participant's Employee Contributions with Interest shall be paid to the Designated Beneficiary.

(sealed Document No. 9 at 64, 65, 437). Here, because Broussard died before any retirement benefits accrued and because Chetlin and Broussard were not married at the time of his death and there was no Qualified Domestic Relations Order in place, Broussard's designated beneficiary – which was Chetlin – was entitled to a refund of Broussard's contributions plus accrued interest on those contributions. Based on the undisputed facts, and Chetlin's failure to point to any provision of the Plan that would entitle her to anything more, *see Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Georgia, Inc.*, 995 F.Supp.2d 587, 600 (N.D. Tex. 2014) ("to assert a claim for benefits under ERISA, a plaintiff must 'identify a specific plan term that confers the benefits in question'"), Chetlin was offered all that she was entitled to under the Plan as Broussard's designated beneficiary.

In response to the Motion for Summary Judgment and the uncontroverted evidence in the record, Chetlin relies on speculation that the administrative record *may* be incomplete, that the terms of the plan *may* have been different during Broussard's term of employment, and that Broussard *may* have contributed more than $280.68.[2] Such speculation does not constitute summary judgment

[2] Chetlin states in her Affidavit, which was submitted with her Response to the Motion for Summary Judgment, that:

> 4. I received other documents from Exxon Mobil over the years that were not part of the administrative record provided by Exxon Mobil. Because I received documents that were not included in the record, I believe the administrative record is incomplete and inaccurate. I have attempted to

evidence and cannot raise a genuine issue of material fact on any aspect of the benefits determination at issue in this case. *Crawford v. Bannum Place of Tupelo*, 556 F. App'x 279, 282 (5th Cir. 2014) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment") (quoting *Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 314 (5th Cir. 2003). As such, based on the contents of the administrative record and the terms of the Plan, the benefits determination at issue is both factually and legally supportable.

## IV. Conclusion and Recommendation

Based on the foregoing, and the determination that Exxon is not the proper party to this suit, and that the benefits decision was proper and supported by the administrative record, the Magistrate Judge

RECOMMENDS that Defendant Exxon Mobil Oil Corporation's Motion for Summary Judgment (Document No. 10) be GRANTED and that Plaintiff's claims against Defendant be DISMISSED WITH PREJUDICE.

---

> obtain copies of other documents I received that were excluded from the record, but due to the ongoing pandemic and my age, I have been unable to safely travel to obtain these documents, which are likely located in Beaumont, Texas.
>
> 5. Exxon Mobile claims that my ex-husband contributed only $280.68 during his entire employment with Exxon Mobil. However, based on my memory of reviewing his pay[] statements during our marriage, I do not believe this amount is correct. However, without reviewing his pay statements, I am unable to testify about the correct amount of contributions made by my ex-husband. Exxon has refused to provide that information to ne, but has insisted that I should simply accept their determination that he only contributed $280.68.

(Document No. 15-1, at 1-2).

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), to the recommendation made herein relative to Defendant's Motion to Dismiss. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen-day period bars an aggrieved party from attacking conclusions of law on appeal. *See Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Court Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 20th day of October, 2020.

Frances H. Stacy
United States Magistrate Judge